## PUNITIVE DAMAGES FOR UNLAWFUL RAILROAD RATES.

### Common Pleas Court of Cuyahoga County.

WILLIAM H. WARNER ET AL v. THE BALTIMORE & OHIO RAILROAD COMPANY.

Decided, May 19, 1911.

*Ohio Railroad Commission Act—Construction of Sections Relating to Unlawful Rates—Pleading—Punitive Damages.*

1. In an action to recover treble damages from a railway company, under favor of Section 569, the plaintiff must bring himself within the act as an entirety, and must make a case for the punishment of the defendant company for the doing or omission to do something prohibited or required by the act considered as a whole, and not by some one or more segregated sections thereof.

2. A lawful rate is a rate scheduled and established pursuant to the statute, notwithstanding it may be *per se* an unjust and discriminatory rate, and punitive damages can be recovered only upon an allegation of violation of the established rate.

3. An allegation by the defendant company that the rate complained of was the established rate constitutes a good defense, as does also an allegation that an action involving the justice of the rate complained of is now pending; but an allegation that the burden of the rate complained of does not fall upon the plaintiff, but upon his customers, is not defensive.

*Bulkley & Inglis*, for plaintiffs.
*S. H. Tolles, F. A. Durban* and *Robert J. King*, contra.

PHILLIPS, J.

The amended answer to the amended petition contains five defenses, and plaintiffs demur to each defense except the first.

The action is to enforce a statutory remedy, and is brought under favor of Section 569 of the act embraced within Sections 487 to 614 of the General Code.

At the outset, let us see what is the general scope and purpose of this statute—the rights which it creates, the wrongs it undertakes to repress, and the remedies it provides.

Manifestly the purpose of the statute is to prevent unjust discrimination in the carriage of passengers and property, and it seeks to do this by the establishment and enforcement of just and uniform charges for service rendered by railway companies as common carriers.

Aside from this statute a railway company, as a common carrier, is subject to judicial control, to prevent the abuse of its corporate powers and privileges; and one who is discriminated against has his remedy by action (43 O. S., 571). But in such action, the wrong could be remedied only as to the particular complainant, and in the particular instance; and in a multiplicity of suits, and a contrariety of decisions, even greater inequalities might result. To prevent inequalities in charge and in service, however that might arise, the Railroad Commission of Ohio was created and empowered.

The means adopted for the accomplishment of the legislative purpose are (1) the establishing and publishing of schedules of rates, and (2) the subjection of such schedules to a supervision from time to time, to the end that fairness and equality may be maintained. An action is given, for punitive damages, to persons injured "in consequence of" any *violation of the requirements or prohibitions of the statute.*

This statute is both administrative and remedial. It embodies a well-defined scheme, and must be taken in its entirety. Sections 504 and 567 show what the statute is aimed at—the wrongs to be repressed, and the duties to be enforced. Sections 505 and 509 show how rates and charges are to be established in the first instance; to-wit, by the railroad company. Sections 524 to 538 show how such established rates may be supervised, modified or changed, by the commission. Sections 543 to 552 show how the doings of the Commission may be subjected to judicial action. Section 510 states the force and effect of the establishment of rates and charges *by the company.* Sections 541 and 542 state the force and effect of rates and rules fixed by the Commission. And Section 569 gives a right of action to injured parties.

While the sections of this statute are in disorderly arrangement, it must be clear, that Sections 504, 567, 510 and 569, taken together, as they must be, show that 504 and 567 are to be operative only as a part of the whole legislative scheme—they can not be segregated, either in the interpretation of the act, or in its application.

This is an action to recover treble damages, under favor of 569. Therefore, the plaintiff must bring himself within the scheme of the statute as an entirety.

Plaintiff is not seeking *compensatory* damages, but *punitive* damages. He must therefore make a case, in his petition, for the *punishment* of the defendant, for the doing or the omission of something prohibited or required *by the act,* not merely by some one or more segregated sections thereof. Treble damages can not be awarded for the charging of rates that are *per se* unfair and discriminative, and on the ground that they are in fact unfair and discriminative.

An action for punitive damages for charging an unlawful rate under this statute can be maintained only for deviation from a rate *scheduled and established* pursuant to the statute. The delict complained of must be a violation of something required or forbidden *by the statute.* A rate scheduled and established pursuant to the statute becomes, *ipso facto,* the lawful rate. This is so, even though the rate so established be, *per se,* unjust and discriminatory. The *statutory* remedy is by resort to the commission, to correct the rate; and then to the court, to correct the com-

mission. Any other construction of the statute would defeat its purpose, which is, to establish and enforce just and uniform rates.

In neither cause of action in the amended petition is it stated that rates had been *established* according to the statute, though this omission is probably aided by the allegations of the second defense. *But nowhere is it alleged that the rates charged were in violation of rates so established.*

The amended petition alleges that, upon complaint of plaintiffs, the commission "duly found" that the defendant was discriminating against plaintiffs. The pleader mistakes the effect of such finding by the commission. Such finding becomes the basis, not for a law suit, but for an *order* by the commission, substituting and establishing a just and reasonable rate (see Section 527). Both a finding and an order are requisite to give effect to any action by the commission. It is like the finding and judgment of a court. A finding is the ascertainment of facts, and results from investigation; a judgment is the application of the law to ascertained facts, and results from consideration. The allegations of the amended petition stop short of showing such action by the commission as would become operative under the statute. But this omission is also probably aided by the allegations of the answer. Phil. on Code Pleading, 84.

But the amended petition is fatally defective in that it does not show that the rates charged the plaintiffs were in violation of any rate established either by the company or by commission. Such showing is indispensable to an action for punitive damages, under Section 569.

Coming now to the amended answer to the amended petition: the second defense alleges that the rates complained of were scheduled and established pursuant to the statute. This aids the petition to the extent of showing that rates were established. It is defensive in that it shows that the rates charged were legalized rates; and this is a good defense if the amended petition calls for a defense.

The third defense alleges that in an action now pending in the Franklin common pleas to correct the action of the commission, these plaintiffs are parties, and issues have been joined. If, as I have interpreted the statute, an order of the commission is a prerequisite to an action for punitive damages, certainly

such action can not be maintained while such order is in process of judicial review; and this is a good defense, at least in abatement, assuming that the amended petition makes way for any defense.

The fourth defense alleges that the "findings and orders" of the commission have been suspended by injunction. The pleader has mistaken the averments of the amended petition. No *order* of the commission is therein alleged. Only a *finding* is alleged; and this, as I have shown, can not aid the plaintiff. This defense answers more than is in the petition, and what is in the petition (to-wit, an alleged *finding*) needs no answer.

The fifth defense alleges that the purchasers of plaintiffs' coal paid the freight, and that plaintiffs never paid any of the rates complained of. This defense is based upon a misconception as to the kind of injury for which a right of action is given by the statute. Section 569 gives a right of action to those "injured * * * in consequence of" a violation of the statute. An injury may be the *consequence* of an act or an omission, without being the *immediate* consequence, provided the act or omission and the injury stand in the relation of cause and effect. For example, if plaintiffs obtained a less price for their coal because their customers had to pay an unlawful rate of freight, they sustained injury in consequence thereof.

The amended petition alleges that their customers were required to pay an unlawful rate, not that plaintiffs paid it; and that, in consequence thereof, plaintiffs got a less price, etc. This fifth defense is not defensive, because its averments are not inconsistent with those of the amended petition.

I find that the amended petition does not state a right of action, and I therefore overrule the demurrer as to the answer, and sustain it as a demurrer to the amended petition, and note plaintiffs' exception.

I have made this ruling after conference with the member of the court who previously overruled a demurrer to the amended petition.